### MATHER *against* CHAPMAN and another.

To effect a transfer of real estate, by levy of execution, under the revised statutes, the return of the officer must shew, that the justice of the peace, by whom the appointment of appraisers, not chosen or agreed upon by the parties, is made, is of the town in which the estate levied upon lies.

By the law previously in force, it was not necessary that the return should shew this fact.

The aot of 1825, confirming the levies of executions in certain cases, is a consti-   *Middlesex,*
    tutional and valid act.                                                              July,
Where a cause, in which the plaintiff claimed title to real estate, by levy of ex-       1825.
    ecution, was tried in the superior court, and a verdict was given and judg-      ⎰‾‾‾⎱
    ment thereon rendered for the defendant ; the plaintiff, at the same term, mov-     Mather
    ed for a new trial, and the motion was reserved  with stay of execution, for          *v.*
    the advice of all the judges, at the next term of the supreme court of errors ;    Chapman.
    and, in the meantime, the confirming act of 1825, was passed ; it was held,
    that the title claimed by the plaintiff was not, at the time of passing such act,
    *finally decided* aginst him, within the proviso of that act.

This was an action of ejectment for three fourths of a certain grist-mill, and the whole of certain oakum works, in *Haddam.*

The cause was tried at *Middletown, February* term 1825, before *Hosmer,* Ch. J.

The plaintiff claimed title to the demanded premises, by virtue of the levy of an execution in his favour, against *Sylvester Chapman,* one of the defendants, in *December,* 1823.   That part of the officer's return, which became material in this case, was as follows : " The creditor, by his attorney, *Elijah Hubbard,* Esq. appointed *John Brainard,* and the debtor *Sylvester Chapman,* neglecting to appoint an appraiser, or to agree to the appointment of a third appraiser, I applied to *Hezekiah Brainard,* Esq. the next justice of the peace in and for *Middlesex* county, who could by law judge between the parties in civil causes, which said justice did then and there appoint *James K. Child* and *Jabez Brainard* appraisers of the land taken on this execution."   *Mather,* the creditor, lived in *Middletown ; Sylvester Chapman,* the debtor, in *East-Haddam ;* and the estate levied upon, was situated in *Haddam.*   The execution and the officer's return thereon being offered in evidence, in support of the plaintiff's title, the defendants objected to the admission thereof, on the ground that the officer, in his return, had not certified that *Hezekiah Brainard,* Esq., the justice of the peace, by whom the appraisers were appointed, was of the town of *Haddam ;* and on that ground the Chief Justice excluded the evidence offered.   The jury returned a verdict for the defendants ; the plaintiff moved for a new trial ; and the motion was reserved, with stay of execution, for the consideration and advice of all the Judges.

*Sherman,* in support of the motion, relied upon the act of the General Assembly, approved *June* 1st, 1825, confirming the

*Middlesex,*
July,
1825.

*Mather*
*v.*
*Chapman.*

levies of executions in certain cases, as decisive. *Stat. May Sess.* 1825, *p.* 70.

*Daggett* and *Hungerford,* contra, admitting that the return in question was good by the law in force, previous to *January* 1st, 1822, contended, 1. That by the law in force at the time of the levy, the return was fatally defective, and the plaintiff acquired no title by the levy. *Metcalf* v. *Gillet* & al. 5 *Conn. Rep.* 400.

2. That the act of *May,* 1825, is unconstitutional and void: First, because its effect is, to impair the obligation of contracts: Secondly, because it takes away and destroys vested rights, and is, in its operation, unjust. *Fletcher* v. *Peck,* 6 *Cranch* 87. *Wales* v. *Stetson,* 2 *Mass. Rep.* 143. *Foster* & al. v. *The Essex Bank,* 16 *Mass. Rep.* 245. 271. *King* v. *The Dedham Bank,* 15 *Mass. Rep.* 447.

3. That this case is within the proviso of the act; the title having been finally decided against the plaintiff previous to the passing of the act. The judgment rendered in the superior court was a *final* judgment; and the pendency of a motion for a new trial does not alter its character, in this respect, any more than a petition for a new trial, or a writ of error on a bill of exceptions, would.

*Sherman,* in reply, insisted, 1. That the act in question is constitutional and valid. All the objections urged against this act, existed, with equal force, against the marriage act of 1820, and were fully considered and overruled, in the case of *Goshen* v. *Stonington,* 4 *Conn. Rep.* 209. Both are *confirming* acts, and *retrospective* in their operation. That affected *vested rights,* as much, at least, as this. And if that, or any other confirming act, was, or can be, just and equitable, this is eminently so. Here, the legislature have done no more than a court of chancery would have done, had it been a case of *contract.* Of the justice and expediency of a law, not expressly prohibited by the constitution, it is exclusively the province of the legislature to judge. The legislative department, acting within its proper sphere, can no more be controuled, by the judicial power, than by the executive, or by private individuals.

2. That the title in question, was, at the time of passing the act, *sub judice.* Execution had been stayed, and the cause continued. It was still *pending* in the superior court. At any

rate, the title was still in controversy ; and was to be the subject of further litigation ; and consequently, was not "finally decided" within the meaning of the proviso.

Hosmer, Ch. J. The land taken on execution, by the statute, ( *p. 57.*) is to be appraised by freeholders of the town where it lies; and if the parties neglect, or do not agree on the appointment, the third appraiser (the law requiring three) is to be appointed, by any justice of the same town. The omission of the sheriff to certify this fact, as his return is the only evidence of title, vitiated the levy.

After the determination of the case in the superior court, and the reservation of a motion for a new trial, to this Court, for the revision of it, the General Assembly, at their session in *May*, 1825, passed an act to establish and confirm the levies of executions on real estate. By this act it was provided, "That in all cases in which executions have been levied on lands or real estate, and the same setoff, by any sheriff, deputy sheriff or constable, or other proper officer, since the first day of *January*, 1822, the returns on which were made according to the law previously and until that time in force, be, and the same are hereby established and ratified."—" Provided, nevertheless, that where the title attempted to be acquired, by any levy made as aforesaid, has been finally decided against the creditor named in such execution, the same shall not be affected by this act." The levy in this case was made according to the law previously, and until that time, in force; that is, until the 1st of *January*, 1822, the period referred to. The law anterior to this time did not require, that the justice of the peace appointing appraisers, should be of the town in which the land levied on was situated; but that he should be competent " to judge between the parties in civil cases." *Stat.* 282. ed. 1808. This competency every justice of the peace had, whose residence was in the town in which either the plaintiff or the defendant dwelt. Hence, it is obvious, that if the justice who appointed the appraisers on the plaintiff's execution, lived in *Middletown* or *East-Haddam*, there would exist no objection to the levy of the execution.

The only objections made to the granting of a new trial, refer to the late act of the legislature.

It is first said, by the defendants' counsel, that the act in question is unconstitutional, because it impairs the obligation of

contracts.    Between the parties there never was any contract relative to the land.    The levy of the execution was altogether *in invitum;* and the objection points at an object, which has no existence.

It was likewise objected, that there had been a final decision against the creditor; and that this brings the case within the proviso of the before-mentioned law.    There was not a final determination of the cause within the meaning of the act.    The judgment of the superior court, undoubtedly, was *final,* as contradistinguished from an *interlocutory* decision; but this technical use of the term was not within the contemplation of the legislature.   They used it in its most absolute sense, as synonymous with *ultimate* or *conclusive,* and intended to discriminate those cases, in which there had been determinations, that put the question at rest, from those, which were remaining in court, and yet the subject of litigation.   The cause between the parties is *in fieri,* and has never been *finally decided,* pursuant to the intendment of this expression, in the act of the legislature.

In the last place, the defendants objected, that the law in question is retrospective, and operates unjustly on vested rights.

In *Goshen* v. *Stonington,* 4 *Conn. Rep.* 209. it was adjudged, by this Court, that a retrospective law impairing vested rights, if it be not clearly unjust, is entitled to obedience; and that to disregard an act of the legislature, unless it be inequitable, oppressive and in violation of the social compact, is not within the confines of judicial authority.    I discern nothing of this character in the law under consideration.    It is the ordinary exercise of legislative authority in similar cases, sometimes requisite to prevent great injustice and public inconvenience.    In the case before us, the error arose from slight and unobserved alterations at the late revision of the law relative to the levy of executions.    The wide-spread mischief to officers, who had faithfully performed their duty, according to their best knowledge; and the rights of numerous creditors, whose debts were in jeopardy, furnished strong political and equitable reasons for the interposition of the legislature.    On the other hand, to the mistaken levy of the execution the debtors had no reasonable objection; and creditors and purchasers, always acting with full information, derived from the records of land titles, could not justly complain, that they were not permitted to wrench

from those who had levied their executions defectively, the property, to which they had, at least, an equitable title.

The real question to be determined, is merely this; whether every retrospective law, acting on vested rights, is invalid. If it is not, there are few cases, the equity of which more imperiously demands legislative interposition, than those within the purview of the late law.

The other Judges were of the same opinion; except that PETERS, J. was inclined to question the validity of the confirming act, on general principles; though he admitted, that he could not distinguish this case from that of *Goshen* v. *Stonington.*

New trial to be granted.