## The People ex rel. Ira C. Bristol et al. v. The Board of Supervisors of Ingham County.

*Legislative power : Retrospective Statutes.* When the Legislature by a valid exercise of its authority has conferred a power to act, and prescribed the mode of action, a substantial compliance with the mode will be essential to a valid exercise of the power. But if the power be defectively or irregularly exercised, and for that reason invalid, the Legislature may, by subsequent action cure any such defect or irregularity, the requirement of which was originally within its discretion, and if its power over the subject was plenary, its power of confirmation will be absolute.

*Legislative power over highways and state roads.* The Legislature have full power within certain constitutional limitations, over the subject of laying out, altering or discontinuing highways ; and this power they may exercise directly. *Art. 4,* § *23* of the *Constitution,* which declares that the Legislature shall not vacate or alter any road laid out by Commissioners of Highways, is equivalent to the express affirmation of the power to vacate or alter a state road. And this power they may delegate to the Board of Supervisors.

*Construction of Statutes : State roads : How altered or discontinued : By the Board of Supervisors under Act No. 146 of 1846 ; or by the Legislature.* § *1 of Act No. 146, Laws of 1846, p. 240, ( Comp. L.* § *1081,)* gives to Boards of Supervisors plenary power over all state roads within their respective counties, Section 2 of the same act ( *Comp. L.* § *1082* ) imposes a duty on the Board of Supervisors to act on any petition of twelve freeholders of each township through which any state road may pass, for the laying out, establishing, altering, discontinuing or opening any such road ; the action of the Board, however, whether to grant or deny the prayer of the petition, is subject to their discretion.

The conferring of such power upon the Board of Supervisors does not divest the Legislature of its authority ; and therefore, in a case arising under the act of 1846 ( *No. 146* ) whether the Supervisors acted regularly or not, or whether they had obtained jurisdiction or not, becomes immaterial if the Legislature have acted directly on the subject. *Act. No. 383, Laws of 1869, ( Vol. 3, p. 1082),* to legalize the action of the Board of Supervisors in discontinuing a portion of the Lansing, Eaton Rapids and Marshall State Road, is a valid exercise of power. The circumstance that the act was passed after the institution of this suit, while it may show an exercise of power not generally to be commended, is not sufficient to invalidate it.

*Vested rights in highways.* The right to pass and repass upon a highway, of persons the value of whose property might be affected by its discontinuance, but who are not owners of the land through which the portion proposed to be discontinued passes, can hardly be looked upon as a vested right of property, which it would not be competent for the Legislature to take away ; and, even if they were entitled to compensation, the law makes full provision for ascertaining and adjusting it.

*Heard January 8. Decided April 5.*

*Certiorari :* To The Board of Supervisors of the County of Ingham.

In 1849, certain Commissioners appointed by the Legislature of 1848, ( *Laws of 1848, p. 220* ), laid out and

established a State Road from Marshall, in the County of Calhoun, by the way of Duck Lake and Eaton Rapids, (in Eaton County), to Lansing, in the County of Ingham. The road passing through the townships of Delhi and Lansing in the last named county.

The road is alleged to have been opened and worked and used as a public highway for over fifteen years.

On the 15th day of October, 1867, the Board of Supervisors of the County of Ingham, by resolution purported to discontinue so such of this road as runs diagonally across the east half of the northeast quarter of section 32, in the township of Lansing.

The only petition presented to the Board for this discontinuance was that of eighteen freeholders of the township of Lansing. The Commissioners of Highways, however, certified to the board that this part of the road was unnecessary, and recommended its discontinuance, and that the survey should be so changed as to run around the southwest corner of said eighty acre lot "on the line of the present highway."

The Board did not, before passing the resolution of discontinuance, adopt any resolution authorizing the Commissioners of this or any other township, to cause the line of the state road to be surveyed and located in such township; nor do they appear to have had any report of such survey before them.

The writ of *certiorari* was issued from this Court, February 24, 1869, at the instance of the plaintiffs in error, who do not claim to own any land along that part of the road thus discontinued; but they describe themselves as of the County of Ingham, and as owners of property on the line of the road, and having occasion to travel it almost daily. They allege that the road is one on which there is a large amount of travel, and that the discontinuance of this portion of it works a great hardship and inconvenience, imposing unnecessary travel on all persons using the road, and

that it materially depreciates the value of the petitioners' property by depriving them of a direct road to the city of Lansing.

On the 30th of March, 1869, after the issuing of the writ in this case, the Legislature ( *Laws of 1869, vol. 3 p. 1082*), passed the following act: "That the action of the Board of Supervisors, of the County of Ingham, in discontinuing that portion of the Lansing, Eaton Rapids and Marshall State Road, running diagonally across the east half of the northeast quarter of section thirty-two, in the township of Lansing, be and the same is hereby legalized," and this act is declared to take immediate effect.

*Longyear & Seager*, for relator.

I. From the record it does not appear that proper petition was ever filed. The statute requires the petition of at least twelve freeholders of each of the townships through which the road passes. *C. L. vol. 1, p. 365, § 2.*

This road passes through nine different townships. The reason for this requirement is obvious. These roads are built under the supervision of the State authorities, for the benefit of no particular locality, but of the State at large.

If, however, the Court should hold that a more limited interpretation is to be given to the language of the statute, and should construe it as requiring the petition to be signed only by freeholders of the townships of that county to whose Board of Supervisors it is presented, the petition in this case is still insufficient. The road passes through two townships in the County of Ingham—Lansing and Delhi—but the petition is signed by the freeholders of Lansing only. We contend therefore, that the Board never had jurisdiction of the subject matter.

II. There was no reference to, or report by the Commissioners of Highways for the township of Lansing; there was no declaration that the discontinuance was for public

interest.—*Bergen Turnpike Co., v. State, 1 Dutcher, 554; Keenan v. Comr's Court of Dallas Co., 26 Ala., 568.*

III. But the most important question in the case arises under Act No. 383, *Session Laws 1869.*

*a.* Retrospective statutes have, even when upheld, always been construed by the courts with great strictness. Their operation must not be enlarged by implication or intendment.

*b.* But if it be held that the Legislature attempted to confer jurisdiction where none existed at the time of the action complained of, then the statute is clearly an excess of legislative power. Irregularities in proceedings may possibly be cured, as the proceedings would not be void, but only voidable. Failure of jurisdiction cannot be supplied. The rule as adopted we understand to be this:—If the proceeding is voidable merely, a healing statute may render it valid, but if absolutely void, it cannot be affected by any subsequent legislation.—*McDaniel v. Correll, 19 Ill., 226.*

*c.* Retrospective statutes touching subject matter, cannot affect actions pending at the time of their passage, though statutes applying only to the remedy or to rules of evidence may.—*Denny v. Matoon, 2 Allen, 377; Taylor v. Place, 4 R. I. 337; Gaines v. Gaines, 9 B. & M., 300-1-2.*

In any event petitioners should have costs, as at time action was commenced proceedings were irregular. They should not be charged with costs on account of legislation taking away their cause of action.

*H. B. Carpenter and F. A. Baker,* for respondents.

I. The Marshall and Lansing State Road was established under an act of the Legislature, approved April 1, 1848. (*S. L. 1848, 220.*) The Board of Supervisors have full control over the opening, altering, and discontinuing of State and Territorial roads.— *Comp. L.* §§ *1081, 1085; Comp. L.* §§ *359, 363; People v. Nankin, 15 Mich., 347.*

We insist that, independent of any petition by freeholders, as provided for under *sections 360 and 1082,* of the *Comp. Laws,* the Board of Supervisors possessed the power, under § *11, Art. 10 of the Constitution, and* §§ *359 and 1081, of the Comp. L.,* to discontinue on its own motion, any portion of the Marshall and Lansing State Road, lying within the County of Ingham.

The resolution does not declare that the Board deemed it for the interest of the public to discontinue the road; but that will be presumed.

II. By the points raised in the petition, it would seem that the counsel for the relators consider that the legality of the action of the Board of Supervisors, depends entirely upon the fact whether or not there was a strict compliance with the provisions of §§ *360 and 1082, of the Compiled Laws.*

But by a careful examination of §§ *360 and 1082, of Comp. L.,* it is evident that they relate entirely to state roads that have been been authorized by the Legislature, and have not been surveyed and located; it being provided that upon the coming in of the report of the Highway Commissioners, the Board of Supervisors may declare such road or roads as surveyed and located by the Commissioners, duly laid out, established, discontinued, opened, or altered, the word " discontinued " being used to give the Board power, not to discontinue a road that has been declared duly laid out and established, but to discontinue the survey and location determined upon by the Highway Commissioners.

III. In the case at bar, the action of the Board of Supervisors was legalized by the Legislature by an act approved March 30, 1869.—*3d vol. S. L., 1869. 1082.*

We submit: 1st. That this act cures any supposed illegality in the proceedings. 2d. That it may be considered a discontinuance of the road by the Legislature itself. The Constitution does not prevent the Legislature from discontinuing State roads.—*Art. 4,* § *23.*

CHRISTIANCY, J.

If the action of the Board of Supervisors under the then existing law, constituted of itself, or with the aid of the subsequent act of the Legislature of March 30, 1869, (ratifying and legalizing that action), a valid discontinuance of part of the state road in question, then there is no ground for maintaining this *certiorari*, and the discontinuance must be affirmed, otherwise reversed.

By the act of May 16, 1846, ( *Laws of 1846, p. 240* ) it was enacted Section 1, " That the Board of Supervisors of the several counties within this State are hereby authorized and empowered to cause to be laid out, established, altered, discontinued or opened all State and Territorial Roads, heretofore or now laid out or hereafter to be laid through or within their respective counties, whenever they may deem it for the interest of the public."

Section 2. Whenever the Board of Supervisors of any county are petitioned to by at least twelve freeholders of each of the townships, through which any such road or roads may pass, they shall upon such petition authorize the Commissioners of Highways of such townships, to cause the line of said road or roads within their respective townships to be surveyed and located therein, and such Commissioners shall report such survey and location to the Board of Supervisors of their county; and upon examination of such survey and report, said Board may declare such road or roads duly laid out, established, discontinued, opened or altered as the case may be; provided that such Board shall deem the laying out, establishing, altering, discontinuing, or opening said road or roads for the interest of the public."

These two sections ( and two subsequent sections not necessary to be here noticed ), were inserted and re-enacted verbatim in the act of April 8, 1851, " to define the powers and duties of Supervisors, &c.," with the omission only of the proviso at the end of the second section.

It is insisted by the plaintiffs in error that the Board could acquire no jurisdiction of the question of discontinuance, without a petition of twelve freeholders of each of the townships of Delhi and Lansing, in the County of Ingham, through which the road runs; and this objection is well taken if the Board derive all their authority to act from the second section.

But after a careful examination of the act, I am inclined to think that plenary jurisdiction of the question was conferred upon the Board by the first section of the act; and that under this section they have full power to act, without any petition, upon their own motion, and. without any restriction from the provisions of the second section; that the second section was intended *not to confer a power*, but to *impose the duty* of acting when the petition there mentioned should be presented; in other words, that the first section confers the power without any restriction not mentioned in it, while the second imposes a duty under certain circumstances, and provides how that duty is to be performed. This view may account for the omission in the act of 1851, of the proviso contained in the second section as passed in 1846. The Legislature of 1851 would seem to have rejected the proviso in the second section, with the idea that the power or jurisdiction was conferred by the first section, which already contained a similar provision, which they thought unnecessary to be repeated in the second, as this imposed a duty subject to the jurisdictional limits only of the first section. If this be not the true interpretation—if the Board was intended to possess no power over the subject except that contained in, and limited by the second section—then the first section can have no effect whatever, and must have been inserted with no intelligible purpose;—a supposition we are not at liberty to indulge, while the act will admit of any other rational interpretation.

But is objected that, if this construction be correct, it

was still necessary that the Board should have found expressly that the discontinuance was for the interest of the public. Whether this would be presumed, or whether its omission would constitute error, it is unnecessary here to decide, since, if the Board had jurisdiction, this omission would at most constitute an error in its exercise, and not a want of jurisdiction. And it is admitted that if the Board had obtained jurisdiction, a mere omission like this or other irregularity, might be cured by the Legislature, and that the act of March 30, 1869, would have this effect.

But I think the same result must follow whether this Board had jurisdiction or not.

The parties who seek to reverse the action of the Board are not the owners of the land through which the discontinued portion of the road passes. They show no rights affected, but such as are common to all other owners of property anywhere along the line of those portions of the road not discontinned; if, in fact, they show any thing more than the mere right of travel, common to all the people of the State. The whole burden of their complaint is that they are deprived of a direct road to the city of Lansing, and as far as we can judge from the case, will be compelled to travel from a quarter to half a mile further in going to and returning from that place. They complain of this, it is true, as depreciating the value of their property. But this, if there be any such damage, being a mere incident arising from the interference with the general public right of travel, common to all the people of this State, can hardly be looked upon as a vested right of property, which it would not be competent for the Legislature to take without compensation ; and, if they are entitled to compensation, the fourth section of the original act and the twenty-eighth section of the act of 1851 ( *Comp. L.* § *362* ) make full provision for obtaining it.

The legislative power is every where recognized as the proper guardian of all such public rights, as the right of

travel upon the highways, and as having as the proper representative of the public, full power over the whole subject of laying out, opening, altering and discontinuing highways. And this power they may, so far as they have not been restrained by the Constitution, exercise *directly* without delegating it to any other tribunal.

Our Constitution has expressly taken from the Legislature the power to "vacate or alter any road laid out by the Commissioners of Highways." ( *Art. 4,* § *23.* ) But this is equivalent to an express affirmation of the power to vacate or alter a state road like that here in question, laid out by the Legislature itself. And there is a manifest propriety and consistency in placing the power to discontinue such roads in the same body which exercises the power to lay out.

The Legislature, then, having complete power to discontinue this road without the intervention of any other officers or board, might, if they saw fit to delegate it to such officers or board, have prescribed in advance such terms, conditions, or special proceedings as they chose to prescribe ; or they might have conferred the full power upon such board or officers without any restrictions or conditions. In short it would have have been clearly competent to have authorized the Board of Supervisors in advance in this very instance, to have discontinued this road by the very proceeding which the Board in fact adopted. And if they could have authorized this in advance, they can equally ratify and legalize the act when done, and that without any reference to the question, whether the Board had jurisdiction at the time of doing the act.

It is upon this principle alone, that various taxes for township bounties to soldiers could be sustained, based upon votes of the inhabitants or the action of township officers wholly unauthorized by law at the time of such votes or action ; as in the case of *Crittenden v. Robertson, 13 Mich., 58 ; Miller v. Grandy, id. 540 ; People v. Supervisor*

*of Blackman, 14 Mich., 336 ; People v. Supervisor of Onondaga, 16 id., 254.* But in the case of all these taxes the Legislature, as in the present case, might itself have authorized in advance the proceedings subsequently ratified, or might themselves have done the act in question, without any such proceeding. There are cases in which the act in question, is, in its nature, such as cannot be done *directly* by the Legislature itself, but is required to be done, or considered and determined upon, by some tribunal or officer, in which it has been properly enough held that such tribunal or officer must have acquired the jurisdiction to act, before it would be competent for the Legislature by a retroactive statute to cure any defects or irregularities in their action.

But these are cases in which the Legislature could not themselves have done the act in question, or could not in advance have given the jurisdiction to do the act, in the *manner* in which it *has been* done. If any cases have gone beyond this in requiring jurisdiction for such a purpose, I see no sound principle upon which they can rest. See *Cooley Const. Limitations, 381 to 383,* and *id. 371.*

I think, therefore, the act of March 10, 1869, legalizing the action of the Board in discontinuing the part of the road here in question must have the same complete effect in this case as if it had been previously passed, and authorized in advance the very course of action adopted by the Board ; and that it renders the action legal and valid.

I think also that this act is in principle equivalent in its operation to an act of the Legislature directly discontinuing the road by their own authority, which they had a clear right to do.

The circumstance that the act was passed after the institution of this suit, and while it was pending, though it may show an exercise of the legislative power not generally to be commended, has not been recognized by the authorities as sufficient to invalidate the act. See the work of my

brother Cooley on Const. Limitations, (*p. 381*), where the authorities are collected.

In any view, therefore, which I have been able to take of this case, the discontinuance must be affirmed. But as the respondents saw fit to apply to the Legislature, pending this suit, to cure the errors in the proceedings, and we have sustained the proceedings mainly upon this ground, we think the respondents are not entitled to costs.

The other Justices concurred.