# DE FERRANTI *v.* LYNDMARK.

PATENTS; INTERFERENCE; FOREIGN PATENTS; STATUTES; CONSTITUTIONAL LAW; VESTED RIGHTS; OBLIGATIONS OF CONTRACTS; POLICY OF THE LAW.

1. In an interference proceeding between foreign inventors, in which both parties rely upon the dates of the filing of their respective applications here and abroad, the fact that one of the parties was granted a patent while the application of his rival was pending in the Patent Office will give him no superior rights, but he will be regarded merely as an interfering applicant. (Following *Paul* v. *Hess*, 24 App. D. C. 462.)

2. Under the act of Congress of March 3, 1903 (32 Stat. at L. 1225, chap. 1019, U. S. Comp. Stat. Supp. 1907, p. 1003), amending the act of March 3, 1897 (29 Stat. at L. 692, chap. 391, U. S. Comp. Stat. 1901, p. 3382), relating to the effect of foreign patents upon applications for patent for the same inventions in this country, an application relates back to the date of the filing of the foreign application, and gives the applicant priority of invention as of that date, while under the original act the applicant's priority dated only from the filing of his application in the Patent Office here.

3. In the absence of language in a statute clearly expressing an intention to the contrary, it will be construed as not having a retrospective operation.

4. The act of Congress of March 3, 1903 (32 Stat. at L. 1225, chap. 1019, U. S. Comp. Stat. 1901, p. 1003), amending the act of March 3, 1897 (29 Stat. at L. 692, chap. 391, U. S. Comp. Stat. 1901, p. 3382), relating to the rights of foreign patentees who apply for patents on their inventions here, did not operate retrospectively; so that the rights of an applicant whose application was pending at the time of the passage of the last act are to be governed by the original, and not by the amendatory, act, and his priority of invention will relate only from the date of the filing of his application here, and not from the date of the filing of his foreign application.

5. While letters patent, when issued, give the patentee a vested right in them, the mere filing of an application for a patent gives the applicant no such right which Congress has no power to affect by legislation.

6. Proceedings requisite to the acquiring of a patent are analogous to the procedure in an action at law before final judgment, where the right is one conferred by statute and entirely dependent upon the legislative will; and in both instances they are mere matters of procedure that may be changed or abolished; and, unless the statute especially provides for the protection of pending cases, it will apply to such cases the same as to future cases arising under it.

7. While a patent is a contract between the government and the patentee, the mere assertion of the right to a patent by the filing of an application does not constitute such a contract as will come properly within sec. 10, art. 1, Constitution of the United States, declaring that no "State shall make any law impairing the obligations of contracts;" and such prohibition is one upon the States, and not upon Congress.

8. The policy of the law belongs to the legislative, and not to the judicial, branch of the government; and if a statute operates to create a hardship upon an individual, it is beyond the power of the courts to grant relief.

No. 439.   Patent Appeals.   Submitted January 20, 1908.   Decided February 11, 1908.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.          *Reversed.*

The facts are stated in the opinion.

*Messrs. Spear, Middleton, Donaldson, & Spear* for the appellant.

*Mr. Ernest Wilkinson* and *Mr. Samuel T. Fisher* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents awarding priority of invention to appellee, Tore G. E. Lyndmark, on a motion for judgment on the record.   It

appears that both parties to this controversy are foreign inventors. No evidence was taken in the Patent Office. Both parties rely on their respective dates of filing their applications, either here or abroad. Both parties are claiming the right to a patent for the same invention, which relates to certain improvements in steam turbines. The appellant, Sebastian Z. De Ferranti, filed his application for patent on the invention in controversy in Great Britain November 11, 1902, and in the United States on October 31, 1903. The appellee, Lyndmark, filed his application for a patent in Sweden June 18, 1902, and in the United States on January 16, 1903. It will be observed that Lyndmark's foreign application antedates De-Ferranti's foreign application, and his application in the United States also antedates De Ferranti's application in the United States; but it will also be noted that the DeFerranti application abroad antedates the filing of Lyndmark's application in the United States.

The only issue before us is the construction to be placed upon the act of Congress of March 3, 1903, amending the act of March 3, 1897 [29 Stat. at L. 693, chap. 391], which amended sec. 4887 of the Revised Statutes (U. S. Comp. Stat. 1901, p. 3382). The act of 1897 was passed to carry into effect the provisions of the International Convention, and provided: "No person otherwise entitled thereto shall be debarred from receiving a patent for his invention or discovery, nor shall any patent be declared invalid by reason of its having been first patented or caused to be patented by the inventor or his legal representatives or assigns in a foreign country, unless the application for said foreign patent was filed more than seven months prior to the filing of the application in this country, in which case no patent shall be granted in this country." Congress, by the act of March 3, 1903, amended this statute to read as follows:

"No person otherwise entitled thereto shall be debarred from receiving a patent for his invention or discovery, nor shall any patent be declared invalid by reason of its having been first patented or caused to be patented by the inventor or his legal representatives or assigns in a foreign country, unless the

application for said foreign patent was filed more than twelve months, in cases within the provisions of section forty-eight hundred and eighty-six of the Revised Statutes, and four months in cases of designs, prior to the filing of the application in this country, in which case no patent shall be granted in this country.

"An application for patent for an invention or discovery or for a .design filed in this country by any person who has previously regularly filed an application for a patent for the same invention, discovery, or design in a foreign country which, by treaty, convention, or law, affords similar privileges to citizens of the United States, shall have the same force and effect as the same application would have if filed in this country on the date on which the application for patent for the same invention, discovery, or design was first filed in such foreign country, provided the application in this country is filed within twelve months in cases within the provisions of section forty-eight hundred and eighty-six of the Revised Statutes, and within four months in cases of designs, from the earliest date on which any such foreign application was filed. But no patent shall be granted on an application for patent for an invention or discovery or design which had been patented or described in a printed publication in this or any foreign country more than two years before the date of the actual filing of the application in this country, or which had been in public use or on sale in this country for more than two years prior to such filing." [32 Stat. at L. 1226, chap. 1019, U. S. Comp. Stat. Supp. 1907, p. 1003.]

It is contended by counsel for appellant that, since both of the applications of Lyndmark were filed before the passage of the act of March 3, 1903, any patent issued thereon could not antedate the date of filing his application in this country, January 16, 1903, but that, since the act of Congress was passed between the dates on which De Ferranti filed his application abroad and the filing of his application in this country, any patent issued upon his application here should relate back to the date of the British filing, since there was less than twelve months between the filing of the two applications. Counsel for

appellee insist that the act of Congress will bear no such construction, and that to so construe it would operate to inequitably subordinate the rights of the senior applicant, Lyndmark, to those of De Ferranti, the junior applicant.

It appears that the application of Lyndmark ripened into a patent dated November 1, 1904. This patent was issued while the application of De Ferranti was pending in the Patent Office. No rights could be acquired under the letters patent that would bar De Ferranti from asserting his rights under his application, and Lyndmark can derive no benefit from the patent so far as the controversy is concerned, but must stand in the same position as if he were an applicant. While the rights belonging to a patentee are much greater and of a different character than those attaching to a mere applicant, as we shall observe later in this opinion, Lyndmark, having received his patent while the application of De Ferranti was pending, acquired no superior rights thereby, but must be regarded, so far as this controversy is concerned, purely as an interfering applicant. In *Paul* v. *Hess,* 24 App. D. C. 462, this court held that, in an interference proceeding, the fact that letters patent had been issued to one of the parties while the application of the other party was pending could not benefit the patentee "in respect to the burden of proof imposed upon his adversary." While this opinion does not go to the extent of deciding the point here under consideration, we think the principle is, in effect, the same. Any rights Lyndmark acquired under his patent were subject to any adverse rights that De Ferranti might be able to establish by virtue of his pending application. Hence, the issue before us can be disposed of without further reference to the Lyndmark patent.

Both of Lyndmark's applications were filed before the passage of the act of March 3, 1903, and, unless that act can be construed to operate retrospectively and apply to applications pending at the time of its passage, his rights must be determined by the act of March 3, 1897 (29 Stat. at L. 693, chap. 391, U. S. Comp. Stat. 1901, p. 3382). Under its provisions, Lyndmark was entitled to receive a patent on his application in

this country, provided his application was filed within seven months from the date of filing the British application. It appears that less than seven months intervened between the filing of the two applications. So far as priority is concerned, Lyndmark neither gained nor lost anything by virtue of the foreign application. The priority of any patent issued under the act of 1897 could only date from the filing of the application in the Patent Office. The distinction between this act and the amending act here under consideration is clearly expressed by the Commissioner: "Prior to the amendment of the law, the filing of a foreign application, or other acts performed abroad, were not acts of invention within the meaning of the law, whereas under the amended law the filing of a foreign application within twelve months before the application here is an act of invention which confers upon the applicant a distinct right." The "distinct right" consists in the applicant, under the amended law, having the priority of his patent issued in this country relate back to the date of filing his application for the same invention in a foreign country, provided the application here was filed within twelve months from the date of filing the foreign application.

Let us examine what rights of priority, if any, Lyndmark acquired by the passage of the act of March 3, 1903. The text of the act is unambiguous and expresses, as explicitly as can be done, the purpose Congress had in mind. The statute relates entirely to the filing of applications for patents, and the rights of applicants making such filings. There is nothing on the face of the statute that would indicate that it was intended to operate retrospectively.

It is a general rule of statutory construction that, in the absence of language in a statute clearly expressing an intention to the contrary, statutes will be construed prospectively. In *United States* v. *Heth,* 3 Cranch, 399, 2 L. ed. 479, the court said: "Words in a statute ought not to have a retrospective operation unless they are so clear, strong, and imperative that no other meaning can be annexed to them, or unless the intention of the legislature cannot be otherwise satisfied." The same rule has

been approved many times by the Supreme Court. *Murray* v. *Gibson,* 15 How. 421, 14 L. ed. 755; *McEwen* v. *Den,* 24 How. 242, 16 L. ed. 672; *Sohn* v. *Waterson,* 17 Wall. 596, 21 L. ed. 737; *Twenty Per Cent Cases,* 20 Wall. 179, 22 L. ed. 339.

Applying these rules to the act before us, it cannot be held that Congress intended either to give patents issued upon applications pending at the time of its passage priorities earlier than they could have acquired under the act of 1897, or to bring such pending applications within its provisions. It clearly is intended, however, to apply to all applications that should be filed after its passage; and under this construction it must be held to include the application of appellant. In *Sawyer Spindle Co.* v. *Carpenter,* 133 Fed. 238, Brown, District Judge, construing the act of March 3, 1903, said: "Statutes are construed to operate prospectively only, unless the contrary intention is manifest beyond a reasonable doubt. *Shreveport* v. *Cole,* 129 U. S. 36, 43, 32 L. ed. 589, 591, 9 Sup. Ct. Rep. 210. The amendments of March 3, 1903, so far as I can see, contain no indication of an intention to revive expired patents, or to give to the phrase, 'nor shall any patent be declared invalid,' a meaning broader than before." This decision was affirmed on appeal, 75 C. C. A. 162, 143 Fed. 976.

We are of the opinion that to construe the statute as applying to applications pending at the time of its passage would be to give it retroactive force. This construction could not be applied to it without disregarding the plain language of the act and reading into it a meaning not intended by its framers. The statute, as amended, could have, therefore, no effect upon the application of Lyndmark; and the priority of any patent issued thereon must correspond with the date of the filing of his application in this country.

It is insisted by counsel for appellee that to so construe the operation of this statute as to give De Ferranti a priority over Lyndmark would be to deprive Lyndmark of a vested right. Letters patent, when issued, undoubtedly constitute a contract. It is to the interest and policy of every enlightened government to promote progress in useful arts. It is among the powers ex-

pressly given to Congress by the Constitution, "to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." Const. art. 1, sec. 8. It is the reward stipulated for the advantages the public derives from the efforts of individuals, and is intended as a stimulus to those exertions. Laws passed for this purpose ought to be so construed as to execute the contract fairly on the part of the United States. But neither of the contending parties had acquired a patent at the date of the enactment of the statute in question, and no such contractual relation existed. The right to a patent is purely a statutory right. Being a right conferred by Congress, that right can be modified or taken away before rights under it have become vested. The filing of an application, and the steps leading up to the issuance of a patent, are mere matters of procedure. The proceedings prescribed by statute for the acquiring of a patent are purely matters of legislative policy, depending on positive law, which may at any time be repealed or modified, withdrawn or limited, at pleasure.

The proceedings requisite to the acquiring of a patent are closely analogous to the procedure in an action at law before reaching final judgment, where the right is one conferred by statute and entirely dependent upon the legislative will. In both instances they are mere matters of procedure that may be changed or abolished; and, unless the statute especially provides for the protection of pending cases, it will apply to such cases the same as to future cases arising under it. The bringing of a suit in such a case does not create a vested right. It is only the assertion of a right that may or may not mature into a vested right. No vested right is acquired by the bringing of such a suit, that is beyond legislative control, until judgment is rendered. Cooley, in his Constitutional Limitations, 7th ed. 543, says: "The bringing of suit vests in a party no right to a particular decision (*Bacon* v. *Callender,* 6 Mass. 303; *Butler* v. *Palmer,* 1 Hill, 324; *Cowgill* v. *Long,* 15 Ill. 202; *Miller* v. *Graham,* 17 Ohio St. 1; *State* v. *Squires,* 26 Iowa, 340; *Patterson* v. *Philbrook,* 9 Mass. 151), and his case must be

determined on the law as it stands, not when the suit was, brought, but when the judgment is rendered. *Watson* v. *Mercer,* 8 Pet. 88, 8 L. ed. 876; *Mather* v. *Chapman,* 6 Conn. 54;. *People ex rel. Bristol* v. *Ingham County,* 20 Mich. 95; *Satterlee* v. *Matthewson,* 16 Serg. & R. 169, 2 Pet. 380, 7 L. ed. 458;. *Excelsior Mfg. Co.* v. *Keyser,* 62 Miss. 155; *Phenix Ins. Co.* v. *Pollard,* 63 Miss. 641; *McLane* v. *Bonn,* 70 Iowa, 752, 30 N. W. 478; *Johnson* v. *Richardson,* 44 Ark. 365." It has been held: (quoting from the syllabus). that "the mere commencement of a suit does not affect the right of Congress to ratify executive acts; and the fact that, at the time the ratifying statute was. enacted, actions were pending for the recovery of sums paid," does not cause the statute to be repugnant to the Constitution." *United States* v. *Heinszen,* 206 U. S. 370, 51 L. ed. 1098, 27 Sup. Ct. Rep. 742.

So, in a patent, no vested right of which the applicant cannot be deprived is acquired under the preliminary proceedings leading up to its issuance. The condition, however, is different after the patent is issued. The holder of valid letters patent enjoys, by virtue of the same, a property right in the invention. for which the patent is issued, that is entitled to the same protection as any other property right during the time for which the exclusive right or franchise is granted. Sutherland, Stat.. Constr. § 662.

It is also insisted by counsel for appellee that, when an application for patent is filed, such a contractual relation arises as cannot be impaired by subsequent legislation. The mere assertion of a right by the filing of an application for a patent does. not constitute such a contract as would come properly within sec. 10, art. 1, of the Constitution, which declares that "no State shall make any law impairing the obligation of contracts." This is a prohibition upon the States, and not on Congress. The contracts protected by the property clauses of the Constitution are such as have been deliberately entered into by the parties, and the assent of the parties to be bound is of the very essence of the obligation so protected. It has no application to obligations imposed by law without the assent of the party

bound, or mere privileges conferred by law. *Louisiana ex rel. Folsom* v. *New Orleans,* 109 U. S. 285, 27 L. ed. 936, 3 Sup. Ct. Rep. 211; *Garrison* v. *New York,* 21 Wall. 196, 22 L. ed. 612; *Freeland* v. *Williams,* 131 U. S. 405, 33 L. ed. 193, 9 Sup. Ct. Rep. 763. Nor is Congress necessarily limited by this clause, in its enactment of legislation, because the practical effect may be to incidentally impair or annul contracts.

In *Mitchell* v. *Clark,* 110 U. S. 633, 643, 28 L. ed. 279, 282, 4 Sup. Ct. Rep. 170, 312, the court said: "It is no answer to this to say that it [the statute] interferes with the validity of contracts, for no provision of the Constitution prohibits Congress from doing this, as it does the States; and where the question of the power of Congress arises, as in the legal tender cases, and in bankruptcy cases, it does not depend upon the incidental effect of its exercise on contracts, but on the existence of the power itself." It is likewise generally held that it is within the power of the legislature to ratify the levy and collection of an illegal tax, even after suit has been instituted for its recovery, on the principle that the right to recover a tax collected illegally is a right conferred by law, and may be modified, limited, or taken away. *Grim* v. *Weissenberg School District,* 57 Pa. 433, 98 Am. Dec. 237; *Iowa R. Land Co.* v. *Soper,* 39 Iowa, 112; *Boardman* v. *Beckwith,* 18 Iowa, 292; *Nottage* v. *Portland,* 35 Or. 539, 76 Am. St. Rep. 513, 58 Pac. 883; *Mattingly* v. *District of Columbia,* 97 U. S. 687, 24 L. ed. 1098. The same principle is stated in Cooley on Taxation, vol. 2, p. 1493: "A property owner who has paid an illegal assessment has, in his action to recover back his payment, no vested right which legislation cannot take away, nor is there any implied agreement to return the assessment if wrongfully collected, which would invalidate such legislation as impairing the obligation of a contract." The same rule has been applied to acts validating illegal bond issues. The authority to issue bonds being by legislative grant, the subject is one peculiarly within the legislative will. *First Nat. Bank* v. *Yankton County,* 101 U. S. 129, 25 L. ed. 1046; *Thompson* v. *Perrine,* 103 U. S. 806, 26 L. ed. 612; *New Orleans* v. *Clark (Jefferson City Gas-*

*light Co.* v. *Clark*) 95 U. S. 644, 24 L. ed. 521; *Grenada County* v. *Brogden,* 112 U. S. 261, 28 L. ed. 704, 5 Sup. Ct. Rep. 125; *Otoe County* v. *Baldwin,* 111 U. S. 1, 28 L. ed. 331, 4 Sup. Ct. Rep. 265; 1 Dill. Mun. Corp. p. 544; Cooley, Const. Lim. 6th ed. 456; *Read* v. *Plattsmouth,* 107 U. S. 568, 27 L. ed. 414, 2 Sup. Ct. Rep. 208; *Bolles* v. *Brimfield,* 120 U. S. 759, 30 L. ed. 786, 7 Sup. Ct. Rep. 736. It is clear that where the right conferred is purely a statutory one, a mere privilege, as in the case at bar, it is within the power of Congress to modify or withdraw it, at least before the application has matured into a patent.

We think the Commissioner erred in the following statement of what he conceived to be the law: "In the present case, under the statutes in force prior to March 3, 1903, Lyndmark had an undoubted right to a patent at the time he filed his United States application on January 16, 1903, but if the act of March 3, 1903, is given the construction contended for by De Ferranti, this right was taken from him by the passage of the act. Furthermore, had Lyndmark's patent issued prior to March 3, 1903, his patent, which was valid at the date of its issue, would be rendered invalid by the act." The Commissioner is confused as to the time that the applicant for a patent acquires such a vested right as may not be disturbed by Congress. This right accrues, if at all, when a patent is issued, and not before. The mere filing of an application confers no such right. It is immaterial, so far as the exercise of the power of Congress is concerned, if it does afterwards appear that, under the pending application affected by the legislation, applicant would have had a valid right to a patent. It is true that a patent is a contract between the government and an individual. Curtis, Patents, sec. 23. 1 Robinson, Patents, secs. 20, 40 to 43; *National Hollow Brake-Beam Co.* v. *Interchangeable Brake-Beam Co.* 45 C. C. A. 544, 106 Fed. 693, 701. It is likewise true that it is the granting of letters patent that forms the contract, and not the filing of the application. If letters patent had been issued to Lyndmark, as suggested by the Commissioner, before the passage of the act, we would be confronted with a very different question. At

the date of the passage of the act of March 3, 1903, no patent had been issued to Lyndmark, and he had no such contract with the government as the protecting clauses of the Constitution place beyond the power of Congress to affect by legislation.

The suggestion that the construction here applied to the statute in question may in this particular case work an injustice is a matter beyond our power to remedy. The judicial department is not concerned with the policy of the law. That belongs to the legislative branch of the government. If the law operates inequitably it may be a proper matter to call to the attention of Congress, but, since the hardship is imposed by operation of law, it is beyond the power of the courts to grant any relief.

The judgment of the Commissioner of Patents is reversed, and the clerk is directed to certify these proceedings as required by law.　　　　　　　　　　　　　*Reversed.*