PHENIX INSURANCE CO. *v.* M. A. POLLARD.

63  641<br>78  114

1. CONSTITUTIONAL LAW.  *Retrospective legislation.  Pending suits.  Enabling acts.  Case in judgment.*

    P., a merchant, failed to pay a sufficient privilege tax for 1884.  In June, 1884, his stock of goods was burned, and he, having insurance thereon, brought suit on his policy of insurance.  The insurance company pleaded the failure of P. to pay a sufficient license to carry on his business as a bar to his recovery, under § 589, Code of 1880, which provides that all contracts connected with the business on which any person fails to pay a sufficient privilege tax shall not be enforceable in any court of this State.  P. demurred to this plea. On appeal to this court, the demurrer was overruled and the cause remanded. Thereupon the legislature, on March 12, 1886, passed an act which declared that all such contracts in favor of such delinquent persons should become enforceable upon the payment by them, within a certain time, of the full amount of privilege taxes due "for the three full years next preceding the passage of this act."  The act by its terms was to apply to all contracts, whether suits were then pending on them or not.  P. complied with the provisions of this act, and replied such compliance to the above plea of defendant.  The defendant company demurred on the ground that the act of March 12 was unconstitutional.  *Held,* that the act of March 12 is constitutional, and the plea of P. thereunder good.

2. PRIVILEGE TAX.  *Section 589, Code 1880.  Enabling act of March 12, 1886. Act of March 18, 1886.*

    The act of March 12, 1886, entitled "An Act granting relief from the penalties imposed, and to render enforceable certain contracts under § 589 of the Code of 1880," was not repealed by an act approved March 18, 1886, which re-enacts § 589 of the Code of 1880, and "all laws now in force and not changed by this act, relating to levy, collection, and payment of privilege taxes," because, as the former act relates to privilege taxes, it may be said to have been expressly declared to remain in full force, and also because it is entirely consistent with all of the provisions of the later act.

APPEAL from the Circuit Court of Chickasaw County.

HON. J. W. BUCHANAN, Judge.

This is a suit on a contract of insurance for three thousand dollars by Mrs. M. A. Pollard against the Phenix Insurance Company, of Brooklyn, New York.  In 1884 Mrs. Pollard was engaged in a general merchandise business.  She had insured her stock of goods for that year in various companies for fifteen thousand five hundred dollars.  In June, 1884, this stock of goods

was burned, and she brought this suit and others against the different companies, claiming that the value of her stock of goods was largely in excess of the amount for which the same was insured. The defendant set up that at the time of entering into the contract and at the time of the burning Mrs. Pollard was carrying on her business in violation of § 589, Code of 1880, in that she was transacting a business with only a ten-dollar license, when she should have had a license for a much larger sum, in accordance with the provisions of chapter x, Code of 1880. Section 589 of that chapter is as follows : "  *  *  *  and all contracts made with any person who shall violate this act, in reference to the business carried on in disregard of this law, shall be null and void so far only as such person shall base any claim upon them, and no suit shall be maintainable in favor of such person on any such contract." The plaintiff demurred to this defense on the ground that a contract of insurance is not a contract connected with the business of a merchant, within the meaning of the above section. On appeal to this court it was held that a contract of insurance is within the purview of § 589, Code of 1880, and the cause was remanded for further proceedings in the lower court. On March 12, 1886, a short time after the rendition of that decision, the legislature passed an act, entitled "An Act granting relief from the penalties imposed, and to render enforceable certain contracts under § 589 of the Code of 1880," which contained the following provisions :

"Section 1. *Be it enacted by the Legislature of the State of Mississippi,* That where any merchant, bank, banker, corporation, or person required to pay a privilege tax under the provisions of chapter x, of the Code of 1880, upon any store, trade, bank, profession, business, or calling, has from any cause failed, neglected, or refused, in whole or in part, to make the payment so required, upon payment to the sheriff of the proper county, within ninety days from the passage of this act, of the true amount that should have been paid, according to said chapter, by such merchant, bank, banker, corporation, or person for three full years, next preceding the passage of this act, without interest, costs, or damages, the

party making such payment shall be, and is hereby relieved from all the pains and penalties imposed by § 589 of said code, and all contracts of such party mentioned or referred to in said section, made at any time prior to the passage of this act, shall become enforceable as other contracts in the proper courts, whether suit be now pending or not, and anything contained in the said section to the contrary, notwithstanding.

"SEC. 2. *Be it further enacted,* That said § 589 shall be and remain in full force, except in so far as the same may be inconsistent with this act."

On the 18th of March, 1886, an act of the legislature was passed—entitled "An Act to amend §§ 557 and 558, Code of 1880," etc., which contained the following provision: "And all laws now in force and not changed by this act, relating to the levy, collection, and payment of privilege taxes, and particularly §§ 586, 587, 589, 590, 591, 592, 593, 594, 595, and 596 [of the Code of 1880] shall remain in full force and effect."

Thereupon Mrs. Pollard paid one hundred and eighty dollars, the full amount of the tax for privilege licenses due for the three years preceding the passage of this act, and replied that fact to the defense set up under § 589, Code of 1880. The defendant demurred to this replication on the ground that the act of March 12, 1886, was unconstitutional. The demurrer was overruled.

The defendant pleaded various other defenses, which need not be set out here. After hearing much evidence the jury found a verdict for the plaintiff for two thousand two hundred and fifty dollars, and the defendant appealed.

*W. T. Houston,* for the appellant.

This act of March 12, 1886, is unconstitutional, because it divests a vested defense. Some of the American courts have held otherwise, but our own State, as well as a majority of the States of the Union, I think, hold this doctrine. Our decisions will control 23 Miss. 496; 57 Miss. 808. See 1 How. 183; 8 S. & M. 44; 10 S. & M. 351 and 600; 10 Geo. 686–701; 47 Miss. 684; 50 Miss. 683; 54 Miss. 743; 56 Miss. 172; 57 Miss. 51 and 331; 60 Miss. 1058; 129 Mass. 560: a strong case—the statute held unconstitu-

tional ; 11 Mass. 396 : the legislature cannot suspend operation of a general law in favor of an individual ; 57 N. Y. 473 : a subscription note invalid for non-compliance with statute act validating void ; 8 Wen. 663 : a statute is not to be construed to retrospectively divest rights ; 1 Denio 129 : a statute enlarging exemptions as to past contracts is void ; 7 John. 493 *et seq.* : in this case is an able opinion from Kent, Ch. J. ; 12 N. Y. 208 : a right to reduce a chose in action to possession, though different from the right to the property, is as much a vested right ; 4 Ga. 216 : such laws forbidden by the nature of our government ; 10 Ga. 190, s. c. 54 Am. Dec. 379 : rights created by legislative act cannot be repealed ; 38 Ala. 512 : not in the power of the legislature to take away a vested right ; 54 Ala. 150, s. c. 25 Am. Rep. 672 : repeal of the statute cannot validate contract ; 2 Wis. 241 : if contract void, it cannot be validated ; 3 Wis. 705 : judicial power fixed by constitution in the courts ; 5 Wis. 611 : a statute passed after reversal of a case by supreme court, so far as it affects that case, is void ; this case very like the one at bar and well worthy perusal ; 13 Wis. M. P. 343, 383 : legislature cannot extend time of redemption of lands sold for taxes theretofore ; 13 Wis. M. P. 146 : a void contract cannot be validated by legislation, nor can an illegal contract ; 23 Wis. 104–5 : legislature no power to make a void deed valid ; 18 Wis. M. P. 311 : contract void for usury cannot be validated by legislation, this was in a case pending, etc., like this ; 36 Wis. 191 : a statute, making usurious contract void, it cannot be cured by legislation ; 42 Wis. 407 : curative legislation can reach defects of execution, but not of power ; 31 Pa. St. 288 ; 68 Pa. St. 45, s. c. 8 Am. Rep. 155 : an expository statute can have no retroactive force, because it is an exercise of judicial power ; 25 Pa. St. 282, s. c. 64 Am. Dec. 701 : the legislature possesses no judicial power ; 6 Har. Pa. Rep. 111 ; 9 Ohio 378 ; 50 Me. 111 ; 44 Me. 67 ; 47 Me. 58 ; 39 N. H. 389 ; 3 N. H. 473–477 ; 4 N. H. 285 ; 59 N. H. 35 ; 35 Ill. 362 ; 19 Ill. 226 ; 1 S. C. 152 ; 1 Hill (S. C.) 182 ; 3 Met. Ky. 255 ; 79 Ky. 186 ; 5 Mon. 122 ; 35 Mo. 174 ; 46 Mo. 376 ; 19 N. J. Eq. 394 ; 43 N. J. L. 495 ; 2 Yerg. (Tenn.) 599 ; 5 Humph. (Tenn.) 170 ; 2 Overton (Tenn.)

341 ; 11 Lea (Tenn.) 127 ; 2 Swan (Tenn.) 35 ; 1 Yerg. (Tenn.) 360 ; 21 W. Va. 318 ; 5 Col. 80 and 184 ; 16 Wall. 317 : the law affecting validity of a contract existing when it is made is a part of it ; 3 McLean 212 ; 2 McLean 195 ; 1 Blackf. 220 ; 2 Gall. 105 ; 13 La. An. 175 ; 51 Cal. 86, 91, 93, and 360 ; 16 Am. Dec. 715 : a law authorizing suits on barred claims is unconstitutional ; 11 Am. Dec. 89 : independent of express constitutional provisions, a law divesting vested rights is unconstitutional ; 47 Am. Dec. 154 : an act which imposes on one a debt or duty to another upon facts existing at the date of its passage is unconstitutional ; 44 Am. Dec. 600 : legislation cannot retrospectively give a right of action when none existed on past facts ; 8 Am. Dec. 52 : an act granting a new trial is void ; 8 Am. Dec. 114 and 115 : no act can alter the legal effect of an existing contract ; 45 Am. Dec. 68 : a law giving validity to a void contract is a nullity ; 71 Am. Dec. 566 : retrospective laws void which impair vested rights or create personal liabilities ; 70 Am. Dec. 641 : the obligation of a contract depends upon the law as it existed at its date ; 72 Am. Dec. 733 et seq.: this case lays stress on the non-repeal of the previous act, the old law part of contract ; 2 Am. Rep. 702 : the constitutional provisions and the legislative act void which revived claims then barred by the statute of limitations of Tennessee ; 7 Am. Rep. 23 : an act that past contracts shall bear interest, etc., void ; 25 Am. Rep. 671 and 674 : a statute pronounces a penalty for an act, a contract founded thereon is void, though not so declared nor expressly prohibited, and a repeal of the statute will not validiate it ; same case in 54 Ala. 150 ; 1 H. Black. Rep. 65 ; 10 Mod. 67 ; Bul. N. P. 146 ; Bishop on Contracts 162, § 463 ; Sedg. Stat. and Cons. 172–3 and 412 (2d edition) ; Pomeroy's Notes 78–163 et seq., 167–8 and 9 ; 45 Mich. 108 : as to when "void" means voidable, and when it means void absolutely ; 15 Eng. Com. Law 232 : as to when "void" means voidable, and when it means void absolutely. Clearly, under the two last decisions, "void" in § 589 of the code cannot mean voidable, but must mean void absolutely. The language, too, seems to recognize that there were two things to be barred, to wit,

the right and the remedy, and to intend to bar both. It takes from the defaulting merchant the *power* to make any contract upon which any claim, either to legislative aid or otherwise, can be based, and further closes the door of the courts upon him. Plaintiff's difficulty is not from defect in the execution of the contract, but her want of *power* to make any contract.

If, as decided in 12 N. Y. 208, a right of action as distinguished from the right to the property is a vested right within the protection of the constitution, why is not a right of defense a vested right within the protection of the constitution? The defendant is as much a citizen as the plaintiff, and the right of a defense is to him what a right of action is to the plaintiff. If the legislature cannot deprive a plaintiff of all remedy on his cause of action, but must leave him some mode of asserting his cause of action, why is not the legislature equally bound to leave to defendant some mode of asserting his defense? and if the legislature can deprive defendant of one defense, why could it not deprive him of all? Why is the law a part of the contract for plaintiff's benefit, and so beyond legislative power, if it is not equally a part of the contract for defendant's benefit, and equally beyond legislative power? Is there any reason why the legislature should be limited in favor of plaintiffs and not in favor of defendants? Is there any reason which suggests that the legislature should not be empowered to legislate against the interests of plaintiffs, but should be empowered to legislate against defendants? What is there in the accidental character of "plaintiff" more deserving than that of "defendant"? In all the cases where the validating act has been upheld the parties have been in *pari delicto*, and the vice has been in the contract sought to be validated; here the parties are not in *pari delicto*, and the infirmity is not in the contract, but in the want of power of the plaintiff to make any contract. It is not proposed to aid a defective execution of a contract, but to declare a contract, which is in all respects formal and perfect so far as its terms and execution are concerned, and in itself not unlawful, but void because of misfeasance of the plaintiff, which is not claimed to have been accidental or excusable, valid as against one without fault in the

premises or knowledge at the time of the misfeasance, who, at the invitation of the State, and induced by her promise as embodied in § 589 of code, to the effect that if it would, by sustaining this defense, aid her in collecting that portion of her revenue derived from the privilege tax, she would guarantee it against the obligation of this policy, made this defense at great expense, and made it so far successfully as to largely increase the State's revenue from this source.

*R. P. Williams*, on the same side.

Section 589 of the Code of 1880 makes all contracts of the unlicensed trader void. *Anding* v. *Levy*, 57 Miss. 57 ; *Decel* v. *Lewenthal*, 57 Miss. 331.

If the word void is used in this statute in the sense of a nullity, and the contracts of the unlicensed trader are void absolutely, then we submit no act of the legislature could make a contract between the parties where none in fact existed before, and any attempt on the part of the legislature would fall within the condemnation of art. 1, § 2 of our constitution. 7 Am. Rep. 23 ; *Dingy* v. *Paxton*, 60 Miss. 1057.

In the case of *Anding* v. *Levy, supra*, it is said that " the statute is self-executing." This decision was made under the act of 1878, which affected the contract of the unlicensed trader in the same way that the Code of 1880, § 589, does. If the statute is self-executing and it rendered the contract void, nothing remained to be done by the purchaser of the goods from the unlicensed trader, or the insurance company in this case, to *make* the contract *void*. The contract was not avoided at the election of one party, but was rendered void by the very terms and provisions of the statute. It is true the word void, when appearing in a statute, very often is used in the sense of voidable ; but where the statute is designed for the protection and benefit of the public (this statute being for the benefit of the revenue of the State, *Pollard* v. *Phenix Ins. Co.*), and renders all contracts made in defiance of that statute *void*, such contracts are absolutely void, whether the thing contracted for is *mala in se* or merely *malum prohibitum*. This seems to be the test in determining the meaning of, or the sense in which, the word

void is used. *Bucher* v. *Morq, etc.,* 45 Mich. 108 ; *Rex* v. *Hipswell,* 8 B. & C. 470 ; *Taylor* v. *Phillips,* 3 East. 155.

There is no distinction in acts *mala in se* and *malum prohibitum.* 1 Kent's Commentaries, star page 468.

Void contract is a nullity, obligatory on neither party, and insusceptible of ratification. 19 Am. Dec. 71 ; *Nichols* v. *Poulson,* 6 Ohio 308, star page, a case almost identical with case in court ; 27 Ala. 267 ; Bishop on Contracts, §§ 463 and 464 ; *Gorsuth* v. *Butterfield,* 2 Wis. 242, star page ; *Mitchell* v. *Doggett,* 1 Fla. 370, a very strong case ; *Robinson* v. *Barrows,* 48 Maine 188.

If the contract of insurance between appellant and appellee was voidable only, appellant has elected to avoid the same before the act of the legislature was passed, and is certainly not bound unless there has been a ratification of the contract under the act of March 12, 1886. *Hasbrouck* v. *Milwaukee,* 13 Wis., star page 38.

" The rights of appellant had been fixed, as they were defined, under the Code of 1880, § 589, by the filing of its pleas, and most assuredly they were determined by the consideration and judgment of this court at the former term, and before the amendatory act, or enabling act, of the legislature had passed ; and that act could not operate to impair or defeat rights which had become judicially established under the law as it at the time stood." See *Barry* v. *Doty et al.,* 5 Wis. 605 ; *Allison, etc.,* v. *Louisville, Harrod, etc.,* 9 Bush. (Ky.) 254 ; Wade on Retroactive Law, § 177.

*R. P. Williams* also argued the case orally.

*Nugent & McWillie,* on the same side.

The act is unconstitutional because the entire pardoning power in this State is vested in the governor ; second, considered as an act not to pardon but as a sale of " indulgence or absolution," in consideration of the payment of three years' taxes, the statute is in excess of the legislative power and is not the law of the land, because it is partial in its operations and effects ; third, the act violates the Bill of Rights of the State constitution, §§ 2 and 28, and the fourteenth amendment to the Constitution of the United States, in that all citizens of the State are not within the range of its protection ; the law is amended so as to exonerate those who have

become subject to its penalties, while, prospectively, those who violate it have no such privilege promised to or conferred upon them.

The special statute was repealed by the privilege tax law passed a few days after. If we concede that the act, as passed, was a valid law, we say it was repealed a few days after its passage by the legislature. On the 18th of March, 1886, six days after the passage of the relief act, the new privilege tax law was approved, and the latter clause of that act runs thus: "and particularly §§ 586, 587, 589, 590, 591, 592, 593, 594, 595, and 596 (of the Code of 1880) shall remain in full force and effect." Before that § 589 was to be and remain in full force, except so far "as the same may be inconsistent with" the relief act passed in the interest of Pollard and others. It is clear that these two acts, in the provision noted, are directly antagonistic. One declares that code § 589 shall continue to be the "law of the land" except so far as it is not consistent with it; the other, that it shall remain in full force and effect. We know that the courts are loth to hold that a statute later in time repeals one antedating it, when it does not in terms purport to do so, and that the repugnancy between the two should be very clear to warrant the court in so holding. But this rule we may well invoke here in our behalf. It is said that the rule has peculiar force in the case of laws of special and local application, which are never to be deemed repealed by general legislation except upon the most unequivocal manifestation of intent to that effect; but the exception stated fits our case. It is a familiar rule that when a new statute is evidently intended to cover the whole subject to which it relates, it will by implication repeal all prior statutes on that subject. *United States* v. *Barr*, 4 Sawyer 254; *United States* v. *Claflin*, 97 U. S. 546; *Dowdell* v. *State*, 58 Ind. 333; *Andrews* v. *People*, 75 Ill. 605; *Swann* v. *Buck*, 40 Miss. 268; *Bank* v. *Chambers*, 8 S. & M. 9; *Southern R. R. Co.* v. *Jackson*, 9 George 334; *Gibbons* v. *Brittenum*, 56 Miss. 232; *Myers* v. *Marshall Co.*, 55 Miss. 344.

The weight of authority is all in favor of the proposition that after a cause of action has become barred by the statute of limita-

tions, a defendant has a *vested right to rely upon that statute as a defense, and neither a constitutional convention nor the legislature has power to divest this right and revive the right to maintain the action. When a statute of limitations has run on a debt, the debtor's right to the defense is vested, and any statute which afterward annuls or takes it away is unconstitutional.* Gardner v. Stevens, 2 Am. Rep. 700 ; *Yancey* v. *Yancey,* 13 Am. Rep. 5 ; *Rockport* v. *Walden,* 20 Am. Rep. 13 ; *Morgan* v. *Perry,* 51 N. H. 539 ; *Wright* v. *Oakley,* 5 Met. 400 ; *Kinsman* v. *Cambridge,* 121 Mass. 558 ; *Atkinson* v. *Dunlap,* 50 Me. 111 ; *Thompson* v. *State,* 54 Miss. 740 ; *Perkins* v. *Guy,* 55 Miss. 177.

*What difference is there between a case of this sort and one in which, under a different statute, a complete defense to an action has arisen ?* Both, so to speak, are gratuities, and the question of consideration is not involved. Under the statute of limitations a complete defense growing out of lapse of time may and does become a vested right. *A grant by the State legislature is a contract.* So far as general legislation is concerned, one legislature can repeal any act which a former legislature has passed, *but when the law is in the nature of a contract and rights have vested under it, its repeal cannot divest these rights.* Cooley's Cons. Lim. 333, 5th ed. In the foot-note to the case of *Goshen* v. *Stonington,* 10 Am. Dec. 134, the meaning of the term " vested right " is given thus : " A vested right, such as a legislative act cannot destroy or impair, is a right in some property."

The legality of a contract must be tested and determined by the law as it stood when the contract was made. The repeal of a statute cannot retroact so as to make valid contracts which were illegal and void under the laws in existence when they were entered into. *Woods* v. *Armstrong,* 54 Ala. 671 ; *Mays* v. *Williams,* 27 Ala. 267 ; *Ry. Co.* v. *Van Horn,* 37 N. Y. 473.

The invalid contract which the statute can validate must be one that the parties could lawfully enter into at the time it was made, which would have been valid except for some defect in its execution, *and which does not interfere with any vested right.* Perhaps the true limit of the curative power of the legislature, as

gathered from all the authorities and sanctioned by principle, is, or ought to be, that it can reach things voidable only, not void; defects of execution only, not of authority or jurisdiction. *Kimball* v. *Rosendale,* 42 Wis. 407 ; *Grove* v. *Tod,* 41 Md. 633 ; *Mayhew* v. *Strong,* 6 Minn. 177 ; *Routsong* v. *Wolff,* 35 Mo. 174; *Ala. L. Ins. Co.* v. *Boykin,* 38 Ala. 510; *Russell* v. *Ramsey,* 35 Ill. 362 ; *Tilton* v. *Swift,* 40 Iowa 78 ; *Boston* v. *Cumings,* 16 Ga. 102 ; *Coners* v. *Burker,* 16 Kans. 498.

We now refer to three cases in which the view we have been presenting is taken by the court, and which we think ought to control the decision of this case. *Maywood* v. *Dugan,* 1 Hill (S. C.) 182 ; *Mayhew* v. *Huber,* 3 McLean 212 ; *Gilland* v. *Phillips,* 1 S. C. 152.

*W. P. & J. B. Harris,* on the same side.

The contract is inherently void, because in violation of law. It is not material whether it is void at common law or by statute, as being in furtherance of an unlicensed business.

The old distinction between *malum prohibitum* and *malum in se* is no longer maintained. Contracts made void by public policy or by express statutory declaration are alike destitute of validity, and are as though they had not been entered into.

This court, and the high court of errors and appeals, have held, in accordance with reason and the weight of authority, that where the right to recover on a valid contract has become barred by the statute of limitations, a repeal of the statute would not revive the liability ; and it would seem to be equally clear that the legislature cannot revive it by express declaration, and so it appears. *Davis* v. *Minor,* 1 How. 183; *Woodman* v. *Fulton,* 47 Miss. 682 ; *Thompson* v. *State,* 54 Miss. 740 ; *Dingey* v. *Paxton,* 60 Miss. 1057.

The case of *Campbell* v. *Holt* is simply an authority without obligatory force. It is against the weight of judicial opinion in the United States.

We are now brought to consider the question of the validity of the act of 1886 as retrospective legislation. We deny that the legislature can, under the name of construction, or removing dis-

abilities, or in any other disguise, render a contract valid which at the time it was entered into was void for illegality, or validate a void sale or create a liability where none existed, in dealing with past transactions.

There is no pretense that the act in question is curative, but the proposition we lay down involves such enactments. The extent to which this court is prepared to go on the power to cure formal defects and irregularities in past procedure, we do not undertake to predict, but the case which affirms this action is that of *Vaughan* v. *Swayze,* 56 Miss. 708. The case, however, was that of a curative act while proceedings to subject land to sale under the revenue act of 1872 were pending and before the land was sold. The land had been duly assessed, but the return of the roll had been delayed beyond the time appointed by law, and this delay was cured.

The case of *Dingey* v. *Paxton* is the law of this court, and we cite it on the subject of validating void titles, creating liabilities where none existed, and reviving contracts barred or extinct. On the same subject see *Medford* v. *Learned,* 16 Mass. 215.

There are cases of legislative action justified where legal liability has become technically extinct, but where well-recognized equities exist, as where a corporation, after its charter has expired, has, by an act of the legislature, been kept alive for the purpose of winding up its affairs. *Foster* v. *Essex Bank,* 16 Mass. 245; *Bank of Miss.* v. *Duncan,* 56 Miss. 166.

No equities arise from forfeiture or penalties, or the consequence of the violation of penal laws. 2 Story Equity Jur., § 1326; *Block* v. *McMurray,* 56 Miss. 217.

What would be said of equities on Sunday contracts, where the seller can neither recover the price nor the article sold. We have here an instance of an attempt by the legislature, unwilling to repeal or amend a law, to deal with offenders of that law, after the court of last resort had judicially declared the consequence, with a view to evade the judgment, an interference in private litigation, a mischief the most demoralizing in its effect on our institutions, a thing often attempted and resisted by the courts. 7 Humph. 137; 5 Pick. 64; 5 Humph. 165; *Supervisor* v. *Saganaw,* 22 Mich; 26 Md. 194; 39 Pa. St. 137.

These attempts are disguised in various ways, some by declaring the meaning of former laws, some by directing suits to be dismissed and offenders discharged, but having the same object. Here we are met by the pretense that it is mere extension of time to pay taxes, but its real object was to avert the consequences of a judicial decree in a private litigation, and its purpose is declared on its face to interfere with pending suits for the purpose of rendering the decision of this court abortive. There is no pretense that the law, the operation of which, in the orderly, simple, and constitutional method is interfered with, is wrong or needs change.

Suits are commenced on contracts made in violation of law. The defendant sets up the illegality as a defense, and the court declares that the contract is a nullity. This act declares that this contract shall be held valid in those suits notwithstanding.

Plainly, this act, take it as it affects the punishment, is an interference with executive power, and, as it affects contracts, is an interference with judicial power.

One position is that it removes a disability. But how can a disability be removed as to contracts past and condemned? The Code of 1880 removed the common-law disabilities of married women; but if the act had extended to past contracts so as to make them binding as personal obligations in cases where her contracts imposed no liability, it would be held inoperative as in excess of legislative power.

The advocates of retrospective legislative power seem to rely on two kinds of cases as affording them thorough support, to wit, cases arising under the statute of limitations and under the usury laws; and it is very clear that in both cases the idea of right, not extinct, but lacking remedy, as judges have supposed, gives them exceptional character. But it would be as unsound in jurisprudence as in logic to make these exceptional cases the governing rule for all illegal contracts, and all cases where liability has never existed, or has ceased or become extinct.

The doctrine of this court is that there may be a vested right in a defense, and the case of the statute of limitations is the strongest possible example of it.

*W. P. Harris* also made an oral argument.

*T. J. Buchanan, Jr.*, for the appellee.

It is claimed by the insurance company that the act is unconstitutional in this, that it impairs the obligation of contracts; that it takes property without due process of law; that it divests vested rights; that it is an encroachment of executive power by granting pardons, and that it is an exercise of a judicial function. These are some of the objections to the bill passed March 12, 1886. It is urged, however, that this law is unconstitutional and void in this case inasmuch as the effect of it is to give validity to a contract which was void by the law in force when it was entered into. This is contended for by attorneys for the insurance company seriously, predicated upon the idea that the contract was absolutely void. We differ materially, however, upon two propositions, viz.: that the contract was not void; that it was, before the passage of the act of March, void so far only as plaintiff might base any claim upon it, and no suit should be maintained in favor of the plaintiff on any such contract. Section 589, Code 1880. And if it was void *ab initio*, it was in the power of the legislature to make it binding and enforceable. To have made it binding and enforceable it violated no contract. Its very object was that contracts might be enforced.

Legislative acts validating invalid contracts have been sustained when the acts go no further than to bind a party by a contract which he attempted to make, but which was invalid by reason of some personal inability on his part to make it, as in consequence of some ingredient in the contract forbidden by law. The question which they suggest is one of policy, and not of constitutional power. Cooley on Const. Limitations 373–4.

It is no objection to a statute repealing a law that it does operate retrospectively and restore parties to rights they had lost by forfeiture. 108 U. S. 150; Ib. 477; *Town of Danville* v. *Pace*, 25 Grat. 1; *Lewis, Trustee*, v. *McElvain*, 16 Ohio 347–599.

The 108 U. S. reviews the following list of cases, and sustains the doctrine therein enunciated: 15 N. Y. 152; *Goshen* v. *Stonington*, 4 Conn. 209; *Savings Bank* v. *Allen*, 28 Conn. 97;

*Welch* v. *Wordsworth*, 30 Conn. 149 ; *Andrews* v. *Russell*, 7 Blackf. 474 ; *Wood* v. *Kennedy*, 19 Ind. 68 ; *Town of Granville* v. *Pace*, 25 Grat. 1 ; *Parmelee* v. *Lawrence*, 48 Ill. 331 ; *Woodruff* v. *Scruggs*, 27 Ark. 26 ; *Gibson* v. *Hibbard*, 13 Mich. 214 ; *Harris* v. *Rutlidge*, 19 Ind. 68, and *State* v. *Norward*, 12 Mich. 195 ; *Lewis* v. *McElvain*, 16 Ohio 347 ; 12 Mass. 195 ; 10 Am. Law Reg. 268.

### REPEAL BY IMPLICATION.

The laws does not favor the repeal of a statute by implication, and hence, where two statutes are seemingly repugnant they must be so construed, if possible, that the latter shall not be a repeal of the former by implication. *McAffee* v. *Southern R. R. Co.*, 7 Ga. 669 ; *Richards* v. *Patterson*, 1 Ga. 583 ; *Southern Railroad Co.* v. *Jackson, City of,* 9 Ga. 334. They must be so construed as both to harmonize if possible. *Coml. Bank of Natchez* v. *Chambers*, 8 S. & M. 9. There will be no repeal by implication unless the repugnancy between the two statutes be plain and unavoidable. *Planters' Bank* v. *State*, 6 S. &. M. 628. And when a repeal by implication is allowed, the extent of the repeal will be only so far as there is a plain and manifest repugnancy between them. *White* v. *Johnson*, 1 Conn. 68 ; George's Digest 698.

The legislature may repeal a penal statute, and by the act of repeal, unless there be a saving clause, all penalties fall, even if given to individuals, and would apply to suits brought and then pending. *Butler* v. *Palmer*, 1 Hill. 324 ; *Welch* v. *Wordsworth*, 30 Conn. 149, and *Town of Danville* v. *Pace*, 25 Grat. 1.

The right which the curative or repealing act takes away in such a case is the right in the party to avoid his contract—a naked legal right, which it is usually unjust to insist upon, and which no constitutional provision was ever designed to protect. Cooley Constitutional Limitations, § 378 and cases cited.

The bringing of suit vests in a party no right to a particular decision, and his case must be determined on the law as it stands, not when suit was brought, but when the judgment is rendered. Cooley 381.

The following authorities sustain the position that bringing suit

vests in the party no right to a particular decision. *Baker* v. *Cotterden,* 6 Mass. 303; *Butts* v. *Palmer,* 1 Hill 324; *Corogist* v. *Long,* 15 Ill. 202; *Miller* v. *Graham,* 17 Ohio St. 1; *State* v. *Squires,* 26 Iowa 340; *Patterson* v. *Philphobrerk,* 9 Mass. 151.

And the following sustain the position that the suit must be determined on the law as it stands, not when the suit is brought, but when the judgment rendered. *Watson* v. *Mercer,* 8 Pet. 88; *Mathes* v. *Chapman,* 6 Conn. 54; *People* v. *Supervisors,* 20 Mich. 95; *Satterlee* v. *Matthewson,* 16 S. & R. 169; 2 Peters 380.

Cooley on Constitutional Limitations goes a step further, and holds if a case is appealed, and, pending its appeal, the law is changed, the appellate court must dispose of the case under the law in process when its decision is rendered. *State* v. *Norwood,* 12 Md. 195; *Yates* v. *United States,* 5 Cranch 281; 6 Cranch 329; 1 Binney 601; 4 Dallas 372; 11 Pickering 350; 21 Pickering 373; 22 N. Y. 350; 13 Howard 421; 5 Wallace 341.

Retrospective laws can be vindicated on the score of sound policy and justice as well as on that of constitutionality. *Andrew* v. *Russell et al.,* Blackf. Ind. 477; 28 Conn. 97.

A law, so far as it releases a penalty to a party to a contract imposed by the law on the same subject, is not a law impairing the obligations of the terms of a contract, but rather enforcing and invalidating them. *Wood* v. *Kennedy,* 19 Ind. 68, and cases cited.

The law recognizes no vested rights in penalties. *Parmelee* v. *Lawrence,* 48 Ill. 331; 16 Serg. & Rawle 191; 1 May Ch. R. 56; 17 Serg. & Rawle 65.

*T. J. Buchanan* also argued the case orally.

*W. G. Orr,* on the same side.

The effort is being made to confound the right to plead failure to perform a duty to the State with the limitation laws of the State, and to invoke as authority our decisions on that point. From *Davis* v. *Minor,* 1 How. 183, on down to *Dingey* v. *Paxton,* 60 Miss. 1057, there is, in our opinion, no analogy between the statute of limitations and the law under discussion.

Statutes of limitations are statutes of repose—they are based upon the soundest principles of reason and justice, and more

injury would be done by their absence than by their presence upon the statute book.

Courts should recognize such statutes. Men who have rights should promptly assert them; they owe this duty to society. But it is erroneous, we submit, to assume that it is the right to interpose the defense of this statute by plea that constitutes the vested right. Our position is that the statute of limitations presupposes the existence of a *thing* possessed by one man and that there is in another the right to possess this *thing*, and that a failure on the part of the one to assert the right as against the other for a period of time fixed by the statute vests, not the right to plead this failure, but the right to the thing itself.

In other words, the man who is upon the land for a period of ten years under color of title, exercising rights of ownership, has at the expiration of that time a right to the land, and not a mere right to interpose a plea if suit is brought—the remedy or the defense is simply incidental to the right to the thing itself. Cooley's Const. Lim., 5th ed., 449.

A party has no vested rights in a defense based upon an informality not affecting his substantial equities. Cooley's Const. Lim., 5th ed., 456.

The rule applicable to cases of this description is substantially the following: If the thing wanting or which failed to be done, and which constitutes the defect in the proceedings, is something the necessity for which the legislature might have dispensed with by prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statute. Ib. 458. We would be pleased to know the substantial equities possessed by the defendant to this defense. When can it be hurt? Does not the record show that Pollard was doing business under an insufficient license. Is it not also shown by the record that she had her license posted up in the store, where any one who came in could see it?

Was there any defect in this contract that the legislature might not have removed anterior to the contract? Is it not a fact that if the legislature had not spoken on this subject the contract would have been good at common law.

63 MISS.—42

Then this disability was simply an incapacity to sue, imposed by the law-making power.

Is there any reason why this incapacity should not be removed? It was placed there for reasons of public policy, and it has been temporarily removed for the same reason. With those reasons we have nothing to do.

If the court will read carefully the remarks by Mr. Cooley in his work on Constitutional Limitations, p. 458 *et seq.*, and *Gross* v. *The United States Mortgage Company*, 108 U. S. 477 ; *Danville* v. *Pace*, 25 Gratt. 2, and *Campbell* v. *Holt*, Supreme Court Reporter, vol. 6, No. 7, p. 1, published January 4, 1886, we shall feel that you have in this all that can be said in favor of the validity of the act of March 12, 1886.

*W. G. Orr* also made an oral argument.

*R. S. Buck*, on the same side.

It is readily admitted that the law which we invoke is retrospective in its character and operation, that is plainly shown by the terms employed, but we find nothing in the constitution of the United States or the State of Mississippi that prohibits the legislature from passing laws of that character. *Read* v. *Beall*, 42 Miss. 472 ; *Canon* v. *Canon*, 40 Miss. 349 ; *Satterlee* v. *Matthewson*, 2 Peters' U. S. Rep. 380 ; *Watson* v. *Mercer*, 3 Peters' U. S. Rep. 38.

It has been suggested, however, that the relief act violates section 1 of article xiv of the federal constitution, that no " State shall deprive any person of life, liberty, or property without due process of law."

In the late case of *Campbell* v. *Holt*, which is found in the U. S. Court Reporter of January 4, 1886, page 209, the question raised here is cogently and exhaustively discussed in an opinion by Justice Miller, who spoke for the court, and we do not think it necessary to do more than cite his views upon the question here raised.

The rule applicable to the question is, " If the thing wanting, or which failed to be done, and which constitutes the defect in the proceedings, is something the necessity for which the legislature might have dispensed with by prior statute, then it is not beyond

the power of the legislature to dispense with it by subsequent statute; and if the irregularity consists in doing some act, or in the mode or manner of doing some act, which the legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by subsequent law." Cooley Const. Lim. 371, 2d ed.

The law, as to power of the legislature to pass retrospective laws, is thus laid down in plain, intelligible language. If there is anything here enunciated as the rule to be observed by the legislature in the passage of this act which was not observed by it we have been unable to discover it. It is a fact that will not admit of discussion, that the constitutionality of the relief law is the only question to be considered here. Mr. Nugent, with all of his industry, has been able to find but three cases that have any bearing on the case—two from Supreme Court of South Carolina, and one nisi prius case. On the other hand, we cite the court to a large number of cases from very nearly every State in the Union, and from the Supreme Court of the United States, sustaining our theory of what is presented by this record. We ask the consideration of the court to the following citations of authority, that we believe, with what has before been referred to, will elucidate the subject and show plainly the law is with us. Cooley on Constitutional Limitations 373–4; *Parmelee* v. *Lawrence,* 48 Ill. 331; *Andrews* v. *Russell,* 7 Black. Indiana, 474; *Woodruff* v. *Scruggs,* 27 Ark. 26; *Goshen* v. *Stonington,* 4 Conn. 209; *Bleakney* v. *Bank Greencastle,* 17 Serg. & Rawle, Penna. 64; *State* v. *Newark,* 3 Dutch. N. J. 186; *Gibson* v. *Hubbard,* 13 Mich. 215; *Harris* v. *Rutledge,* 19 Iowa 389; *State* v. *Squires,* 26 Ib. 340; *Schenby* v. *State,* 36 Penna. St. 29, 57; *Seymour* v. *People,* 16 California 332; *Syracuse Bank* v. *Davis,* 16 Barb. 188; *Thompson* v. *Morgan,* 6 Minn. 292; *Lessee of Dulany* v. *Tilghman,* 6 G. & J. 461; *Payne* v. *Treadwell,* 16 Cal. 220; *Ex parte McCardle,* 7 Wall. 516.

It is urged that the act under discussion stands repealed by a subsequent act passed at the same session of the legislature, which act of repeal was on its passage about the same time that the act

under consideration was. This argument violates the rule of implied repeals, and sets at naught what the legislature had said, but a day or two before, was its will in the passage of this remedial statute, and solely by implication. The act claimed to be the act of repeal was nothing more than is embraced in the relief law by its very terms. To say that the act under consideration stood repealed by the same legislature that enacted it, and that by implication, would be to involve that body in a game of "hide and seek" that would be disreputable.

*Miller, Smith & Hirsh,* on the same side.

1. A *brief* statement of a few well-settled principles of law seems all that is necessary to vindicate this statute from the charge of unconstitutionality.

(1) " A party cannot have a vested right to do wrong." *Foster* v. *Essex Bank,* 10 Mass. 145 ; *Freeborn* v. *Smith,* 2 Wall. 175.

(2) " A State law which makes valid a void contract does not impair the obligation of a contract within the meaning of the constitution of the United States." *Satterlee* v. *Matthewson,* 2 Pet. 380.

(3) " Laws curing defects which would otherwise operate or frustrate what must be presumed to be the desire of the party affected cannot be considered as taking away vested rights ; courts do not regard rights as vested contrary to the justice and equity of the case." *State* v. *Newark,* 25 N. J. 185.

(4) " Independent of the nature of the forfeiture as a penalty which is taken away by repeal of the act, the more general and deeper principles on which they are to be supported is that the right of the defendant to avoid his contract is given to him by statute for purposes of its own, and not because it affects the merits of the obligation, and whatever the statute gives under such circumstances, as long as it remains *in fieri* and not realized by having passed into a complete transaction, may, by a subsequent statute, be taken away ; it is a privilege that belongs to the remedy, and forms no element in the rights that inhere in the contract. The benefit which he has received as the consideration of the contract which, contrary to law, he actually made, is just ground for imposing upon him, by subsequent legislation, the liability which he

intended to incur. That principle has been repeatedly announced and acted upon by this court." *Ewell* v. *Daggs*, 108 U. S. 143.

"The right which the curative or repealing act takes away in such a case is the right in the party to avoid his contract, a naked, legal right which it is usually unjust to insist upon, and which no constitutional provision was ever designed to protect." Ib.

In *Baugher* v. *Nelson*, 9 Gill (Md.) 299, it is said,: "When vested rights are spoken of by the courts as being guarded against legislative interference, they mean those rights to which a party may adhere, and upon which he may insist without violating any principle of sound morality."

In delivering the opinion of the Supreme Court of Pennsylvania, in the case of *Satterlee* v. *Matthewson*, 16 S. & R. 169, Judge Duncan said : "There can be no vested right to do wrong. In the nature of things there can be no vested right to violate a moral duty or resist the performance of a moral obligation."

It is claimed that the highest court of this State stands committed against the validity of legislation of this kind, when it held that the right acquired by the lapse of time, fixed by the statute of limitations, might not be disturbed. Conceding that that decision ought to stand, there is a marked and manifest distinction in the two cases.

With respect to the statute of limitations, *it* may well be said to enter into and form part of the contract between parties, whereby it results that the parties agree that unless some right is asserted, on account of the promisor's default within the time limited, it shall not be asserted at all.

The State has no interest in the subject, and cannot revive a contract which the parties have thus agreed shall be dead.

In the present case, however, the right of action was suspended or denied in spite of the *contract*.

The parties had no interest in this result; it was designed solely to compel the performance of a duty by the citizen to the State.

Only the State is interested, so that the parties cannot complain when the right of action, according to their contract, is restored.

Should the legislature see proper to remit the tax, it is inconceivable that any party should complain.

2. After assuming the existence of the statute in arguing that it is void, or it does not apply to this case, recourse is then had to the final position that the statute has been repealed.

The novelty of the proposition is one of its chief merits. In Sedgwick on the Construction of Constitutional Law, it is said, p. 98, second edition: "A general affirmative statute does not repeal a prior particular statute, or prior particular provisions of a statute, unless negative words are used, or unless there is such irreconcilable inconsistency as indicates an intent of the legislature to repeal." Ib., p. 98: "The rule has been laid down in this form : the repeal of a special statute for a special purpose must either be expressed, or the manifestation of the legislative intent to repeal must be so clear as to be equivalent to an express direction." Ib., p. 96, it has been held, "when the section has been amended by addition, and was repealed without mention of the addition, and was re-enacted in the same statute without change, also without mentioning the addition, the court declared the intent to be that the addition should remain in force."

And this court has announced "repeal by implication is not favored." *Pons* v. *State*, 49 Miss. 1 ; *Beard* v. *Supervisors*, 51 Miss. 549 ; *Smith* v. *City of Vicksburg*, 54 Miss. 615 ; *McAfee* v. *Southern Railroad Co.*, 7 Geo. 669 ; *Richards* v. *Patterson*, 1 Geo. 583.

*W. R. Harper* filed a brief and argued orally on the same side.

CAMPBELL, J., delivered the opinion of the court.

The act approved March 12, 1886, entitled "An Act granting relief from the penalties imposed, and to render enforceable certain contracts under § 589 of the Code of 1880," was not repealed by the act approved March 18, 1886, entitled "An Act to amend §§ 557 and 585, Code of 1880, etc." The two acts may well stand together, and, therefore, the later is not a repeal of the earlier. It is true that § 589 of the code is specifically re-enacted by the act of March 18, and so are "all laws now in force and not changed by this act relating to levy, collection, and payment of privilege taxes," and as the act of March 12th relates to privilege taxes it may be said to have been expressly declared to remain in full

force, but aside from this it would not have been repealed, since it is entirely consistent with all the provisions of the later act. By § 589 of the code it is declared that he who does business without paying the tax imposed for the privilege shall not acquire any right he can enforce by virtue of any contract in reference to that business. By the act of March 12, 1886, it is provided that as many, through misapprehension or evasion, have conducted business in violation of § 589 of the code, and as a consequence have claims they cannot enforce, they may, within ninety days hereafter, pay what is now prescribed and be thereby freed from the existing disability to enforce claims not now enforceable, because of said section.

Is the act of March 12th valid, or must it fall at the hands of the judiciary as a transgression of the prescribed bounds of legislative authority?

It is retroactive, but is not on that account unconstitutional, since such legislation is not prohibited by the constitution of the United States or of this State. It cannot be condemned as an invasion by the legislature of the domain of executive or judicial power, for it is legislative in its character, although it is for the relief of a class. It is settled by decisions of the Supreme Court of the United States that such an act is not violative of the constitution of the United States. *Satterlee* v. *Matthewson*, 2 Peters 380; *Watson* v. *Mercer*, 8 Peters 88; *Ewell* v. *Daggs*, 108 U. S. 143; *Gross* v. *Mortgage Co.*, Ib. 477; *Campbell* v. *Holt*, 115 U. S.

The overwhelming weight of authority in the courts of the States, whether considered with reference to the number or value of the decisions, is in favor of the proposition that this act is not violative of the constitution of the State, and is a valid exercise of the undoubted power of the legislature.

We might cite a long list of cases in support of this conclusion and quote largely from them, but it is unnecessary. The subject is discussed and most of the cases bearing upon it are referred to in the last edition of Cooley's Constitutional Limitations under the head of " RETROSPECTIVE LAWS." Speaking of legislative acts validating invalid contracts, this learned author says, " When these acts go no farther than to bind a party by a contract which he has

attempted to enter into but which was invalid by reason of some personal inability on his part to make it, or through neglect of some legal formality, or in consequence of some ingredient in the contract forbidden by law, the question which they suggest is one of policy and not of constitutional power," and in this we concur. The few cases denying this are unsatisfactory, and proceed, as we think, upon an erroneous view of legislative authority.

The State, for purposes of its own, denied to him who violated its revenue law the right to enforce any contract he made in reference to the business unlawfully carried on. It was competent for the State to remove the disability it had imposed and to permit contracts not before enforceable because of this disability to be enforced. The State may not make contracts between individuals, it is true, but when individuals have themselves made contracts not enforceable only because of some obstacle the State has interposed, the power which created the barrier may remove it at any time before it has become *res judicata* between the parties. Until then there cannot be said to be a vested right beyond the reach of legislative interference.

We would not be understood to assent to the doctrine of the Supreme Court of the United States as to the right of the legislature to deprive one of the completed bar of the statute of limitations, and we repudiate the distinction sometimes recognized in reference to the power of the legislature to deal with them between rights sprung from the common law and those created by statute. A right derived from a statute has a higher origin than one dependent on the common law, which may be changed at will by the legislature. The power of the legislature is not determinable by the origin of the right affected as sprung from the common law or a statute, but by other considerations.

We have considered the numerous questions presented in the record, and content ourselves with saying that the verdict would not be disturbed, if it had been for the defendant, and it would have been more satisfactory to us if it had been for half its amount, but we have determined not to set it aside.

*Affirmed.*